# WEAKLEY COUNTY v. W. L. CARNEY.

Western Section.  March 31, 1932.

Petition for Certiorari denied by Supreme Court, July 23, 1932.

King Webb, of Dresden, for plaintiff in error.

J. W. Thomas and Maiden, McWherter & Gallimore, all of Dresden, for defendant in error.

OWEN, J.  Weakley County, one of the counties of Tennessee, has appealed from a judgment rendered against it for $1250, in favor of L. W. Carney, a citizen of said county.  Hereinafter we will refer to Carney as plaintiff and Weakley County as defendant.  The verdict and judgment is for damages resulting from certain property of the plaintiff having been destroyed by fire on the 4th day of August, 1930.  The plaintiff has shown by the declaration and by the proof that he is the owner of a tract of land containing about fifty acres, located in the 13th Civil District of said county.

On August 4, 1930, a fire reached the plaintiff's clover and grass field and spread over the field destroying his crop of clover and grass, also reaching and destroying his residence, stock barn, tobacco barn and other out houses and fences.  The plaintiff's farm lies north and adjacent to a public road, known as the Fulton road, being one of the public roads belonging to said county.

On the 4th day of August, 1930, said road hands or employees of the defendant, under the direction of Jim Mansfield, the foreman, who was carrying out the orders of E. G. Fuller, County Road Supervisor of said county and who had charge of the laying out and the working of the public roads in Weakley County, were ordered to build a levee on and along said Fulton road just south of plaintiff's land.  It was necessary, in order to build said levee, to obtain some dirt from the lands of one French, who was an adjoining land owner of plaintiff, and the dirt obtained was on a strip of land just north and adjacent to the Fulton public road.

The road hands or employees of the county, about a week prior to August 4, 1930, had cut the briers and brush on this strip of land to be used for levee purposes and piled the same.  On the morning of August 4th, this brush and briers were set afire in order to burn said brush and briers and get the same out of the way so

that the strip of land could be plowed and the dirt removed and used in building said levee on said public highway. It appears that some hours after the brush and briers were burned, fire reached the plaintiff's field causing the destruction to his property as heretofore stated.

The plaintiff instituted his suit, alleging that the acts of the road employees created a nuisance. There were three counts to plaintiff's declaration.

The defendant filed a demurrer, whereby it was insisted that plaintiff's declaration was founded on negligence and not a nuisance, and that the defendant being one of the counties of Tennessee is not liable for negligence of its agents and servants in the cause of action as stated in plaintiff's declaration. This demurrer was overruled, to which action the defendant excepted. The defendant then filed a plea of not guilty and a plea of contributory negligence. Issue was joined on the plea of contributory negligence. There was a trial and many witnesses testified. At the conclusion of all the evidence the defendant entered a motion for a directed verdict, on the grounds that:

(1) Because the evidence when taken and fairly considered as a whole does not sustain the allegations of the declaration.

(2) Because the evidence when taken and fairly considered as a whole shows that if any cause of action is made out it is an act. of negligence; and the defendant would not be liable for the negligent act of its employees in the discharge of governmental functions; and the evidence in this case shows that Mr. Fuller, who directed the work, and Jim Mansfield, the foreman, were acting for Weakley County in a governmental function.

And the defendant, therefore, moves the court to direct the jury to return a verdict in favor of the defendant in this case.

This motion of the defendant was overruled, and the case submitted to the jury who reported a verdict for the plaintiff. There was a motion for a new trial, which was overruled. An appeal was prayed and perfected. A proper bill of exceptions filed, and the defendant has filed nine assignments of error. These assignments raise the following propositions:

(1) There is no material or legal evidence to support the jury in favor of plaintiff.

(2) The court erred in overruling the defendant's demurrer.

(3) The court should have sustained defendant's motion for a directed verdict.

(4) The court committed error in its charge to the jury in stating what it took to constitute a nuisance, and in leaving to the jury the question, "whether or not a nuisance had been created."

The real question to be determined upon this appeal is whether or not Weakley County, through its agents, created and maintained a nuisance, resulting in the destruction of plaintiff's property, or was plaintiff's property destroyed by the negligence of defendant's employees.

Counsel for the plaintiff has challenged the sufficiency of the defendant's assignments of error, and it is insisted that said assignments of error do not comply with the rules of this court.

The assignment, in regard to there not being any material evidence to sustain the verdict, complies with the rules of our court, and it will be considered, also the question raised by the demurrer.

We quote from plaintiff's declaration, the material averments upon which his law suit is founded, after describing the location of his property and what was destroyed, etc. The declaration avers as follows:

"That the defendant, one of the legally created and organized counties of Tennessee, being the proprietor of the public highways of said county, on or about the 4th day of August, 1930, by and through its agents and servants, while engaged in building a levee, along and on said Fulton or Sam French road, one of its public highways, on the south side of plaintiff's said tract of land, near the southwest corner thereof, in order to obtain dirt with which to make said levee, cleared and piled the brush and debris found on the side of said road and set fire to the same in order to burn said brush and debris and get the same out of the way, so that the strip of land so cleared and burned as aforesaid, could be plowed and the dirt therefrom removed to and used in building said levee; that when said fire had burned down, the agents and servants of the defendants scattered said fire and the burning stumps of said brush, and in getting the same out of the way the agents and servants of the defendant threw a lot of said burning brush, stumps and brush off of said strip of land and onto the side of said highway nearest plaintiff's land, and by the side of said road, so as to clear the same for the removal of the dirt; that said fire and burning brush so scattered to the side of said highway continued to burn and spread to and ignited a dry and highly inflammable stump within a few feet of plaintiff's west line and near the southwest corner; and this stump and ends and butts of brush so scattered continued to burn until about noon of said day; that the defendants' agents and servants at the noon hour left the premises and the place where the work was being done and went away some distance to a neighboring house to their lunch and negligently left said stump and brush burning, unattended; that at the time the agents and servants left said fire so unattended there was and for some time had been a strong wind

blowing from the south and southwest and over and toward the plaintiff's said tract of land, which was contiguous to said highway and within about ten feet from said burning stump and brush stubs, that a great drouth was prevailing at said time and the premises surrounding said fires so left unattended were littered and covered with dry and highly inflammable leaves, weeds and debris, extending to and connected with plaintiff's said tract of land; that said burning stump and smouldering scattered fires were elevated by being on the bank of a ditch, on plaintiff's west line, and by being thus elevated were exposed to the current and force of the high winds then blowing toward and onto the plaintiff's said tract of land; that said drouth was the worst in said section of Weakley County for many years and that there was but little if any moisture in the soil, and at the place were said fire so left unattended was burning there were large accumulations of dry and inflammable leaves, weeds and brush and that this condition extended to the plaintiff's land, the west line of which near his southwest corner was within a few feet of the place and places were said fires were left burning; and that the fire and fires so left burning and unattended in the midst of and surrounded by the inflammable substances mentioned blew and escaped and spread onto the plaintiff's said tract of land, which was covered with inflammable grass and clover, and burned over about forty acres thereof, burning and destroying the plaintiff's grass and clover, and injuries his timber and burning and destroying his said residence, stock barn, tobbacco barn, hen house, smoke-house and about twenty-five thousand pounds of hay which at the time was stored in said barns.

Plaintiff further avers that the fire so put out, so scattered and so left burning, unattended, by the side of said highway, and very near the plaintiff's tract of land was surrounded by dry and highly combustible grass and debris, and that said dry grass and leaves formed a direct connecting line or contact with plaintiff's said tract of land from the point of contact with said fire and over the same and to and including the buildings herein mentioned, was likewise covered by dry and inflammable grass, and that said situation was peculiarly dangerous; and when said fire spread or was blown from the point and points where the same was negligently left burning by the defendants' agents and servants reached the plaintiff's said tract of land it swept over the same rapidly and in great waves and burned and destroyed his grass and clover, injured his timber and destroyed his buildings and hay as aforesaid. And the plaintiff avers that the negligent leaving of said fire unattended on said dry and windy day surrounded by said highly combustible grass, weeds and leaves as aforesaid was a nuisance, and directly and proximately caused and resulted in plaintiff's loss and damages as aforesaid for which

he sues the defendant for $5,000 as damages and demands a jury to try the issues to be joined."

The term "nuisance," derived from the French word, "nuire," although it has been regarded as incapable of definition so as to fit all cases, has been referred to as a well understood term, a term with a well defined legal meaning, in its general sense a term of quite broad and comprehensive signification. It has also what may be called a special or particular meaning in its application to public streets and highways. . Literally "nuisance" means "annoyance." The term signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom. In legal phraseology, the term "nuisance" is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecent, or unlawful personal conduct, working an obstruction or injury to a right of another, or of the public, and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage. "Nuisances" are public or private. An individual who sustains an injury peculiar to himself may have relief against a public or private nuisance. 46, Corpus Juris, 645.

A nuisance may exist either with or without negligence. As a general rule, negligence is not involved in nuisance actions or proceedings, and is not essential to the cause of action. If a particular use of property causes a nuisance this fact is sufficient to entitle a person injured thereby to relief. If a nuisance exists, the fact that due care was exercised and due precautions were taken against the annoyance or injury complained of is no excuse. 46 Corpus Juris, 663.

Negligence is the want of ordinary care. The failure to exercise ordinary care, the first element of actionable negligence, is a lack of care. The distinction between "nuisance" and "negligence" has been stated as follows:

"When defendant is the creator of a dangerous situation, his liability therefor is for a nuisance; but when defendant did not create a dangerous situation but is nevertheless under a duty to remove the danger, failure to do so involves a question of negligence. Another statement of the distinction is that, where the damage is the necessary consequence of just what defendant is doing, or is incident to the business itself or the manner in which it is conducted, the law of negligence has no application and the law of nuisance applies. It has also been said that the distinction lies in the fact

that the creation or maintenance of a nuisance is the violation of an absolute duty, the doing of an act which is wrongful in itself, whereas negligence is the violation of a relative duty, the failure to use the degree of care required under the particular circumstances in connection with an act or omission which is not of itself wrongful.'' 45 Corpus Juris, 634.

Counsel for both parties, by stipulation, agreed that the plaintiff, at the time of the fire complained of, was the owner of the land described in the declaration. It was agreed that the Fulton road described in the declaration was and is one of the highways of defendant Weakley County, and as such was and is kept up by the defendant. It was further agreed that the defendant county was engaged by its agents and servants in building a levee along and on said Fulton highway, near the southwest corner of plaintiff's land.

On the day the plaintiff's property was destroyed by fire, the evidence shows that a crew of men, under Jim Mansfield, as foreman, arrived at a point on the Fulton road, adjacent to plaintiff's land, early in the morning or forenoon, that they had to use plows and scrapers to procure dirt with which to build a levee for the defendant on said highway. They burned the briers, brush and weeds that had been cut some weeks before for the purpose of plowing the land in order to get the dirt. This pile of brush, weeds, etc., was about three feet high. It burned very readily and quickly, and the hands began plowing by seven oclock. It burned into a ditch eight or ten feet north from where the match was first applied. A man named Vowell, who was doing the plowing, went in the ditch and stamped the fire out. The ground where the fire had burned was broken. The space plowed was about ten or fifteen feet wide.

It appears that after the brush, briers, etc., had burned there were a few willow poles that had burned in two. These poles were about four or five inches in diameter. Some of these poles continued to smoke. They were left within five or six feet of the ditch. When these road hands, ten or twelve of them, in number, left their work where the brush had been burned, the morning of August 4th, there was no sign of any fire. They went to their noon meal, some distance away. They saw no sign of any fire, and from all appearances all fire had been extinguished.

It appears that George Vowell and two young men, who were working with him and with the other hands, went to Vowell's for the noon meal. He lived on an adjoining farm of the plaintiffs. These parties, after eating their noon meal, lay down and went to sleep. Mrs. George Vowell called her husband's attention to smoke that she saw arising from the point where the road hands had been working before noon. Vowell and the two young men with him rushed to the scene, and he discovered fire in plaintiff's field some

fifteen or twenty feet from the fence. They undertook to cut brush and whip the fire, but could not control it. Soon after Vowell and the two young men rushed to the scene of the fire, Mansfield and the other hands came, but the fire could not be controlled and spread rapidly over plaintiff's clover and grass field. The proof shows that it was a very dry season at the time of the fire, and that a strong wind was blowing from the southwest. This breeze seems to have arisen about noon, or after the road hands left the scene of work for their noon meal.

A Mr. and Mrs. Albert Brundige, citizens of Weakley County, drove on the Fulton road and along where the road hands had been at work on the day of the fire, between twelve and one o'clock. The road hands had gone to dinner, so the witnesses testify. These witnesses saw some fire by the side of plaintiff's fence, right in the corner of his lands, and on the west side of the ditch. These witnesses state that they did not meet any of the road hands going from their work. Mr. & Mrs. Brundige did not notify any one of the fire. Mrs. Brundige testified that the fire had not scattered at the time she and her husband passed. She testified that it had rained the day before at Dresden, and was cooler, and there was a good breeze blowing. She compared the breeze of August 4, 1930, to being about like the breeze that was blowing the day she testified, which was the August term of the Circuit Court of Weakley County, 1931.

Two young men, Raymond Hall and Wayne Griffin, passed along this road where the levee was being built, one the day of the fire, about 12.15 o'clock. They were traveling in a wagon; Hall was on the north side next to plaintiff's lands. Hall testified that he saw smoke in the ditch, but that he did not see any fire. They had met some of the road crew as the road crew were going to their noon meal prior to the witnesses reaching the levee. The witness Hall said that he never thought anything about the smoke as he knew the men were working on the levee. Griffin, Hall's companion, testified that he did not see any smoke. Hall was nearer the witch where he testified he saw smoke than Griffin. Griffin testified that he and Hall passed the place where the road hands had been working, between twelve and 12:30.

It appears that Mansfield, the foreman, and Fuller, the road supervisor, had cautioned the road hands to be careful about fire. Fire was used to burn off the right of way, to burn the weeds, briers and brush that were cut and left to dry in piles and later burned.

It is plaintiff's insistence that the fire along the ditch ignited a stump, some two or three feet higher or above the ditch, and sparks blew from this stump to plaintiff's lands and set the dry grass and dry Japan clover afire; and the negligent acts of defendant's

agents and employees created a nuisance to plaintiff's property. Evidently, one of the willow poles that burned in two had not been extinguished when the road hands went to their noon meal, but none of the road hands saw any smoke or any fire when they left the scene of their work, about twelve o'clock. There was some fire near plaintiff's field when Mr. and Mrs. Brundige passed; this was probably between 12:30 and one .o'clock. The fire was not of sufficient force or flames to cause any alarm in the minds of Mr. and Mrs. Brundige. Raymond Hall saw some smoke in the ditch about 12:15, and by one o'clock the fire was raging and beyond control. These are material facts reflected by the record.

The plaintiff's counsel relies on the doctrine announced by our Supreme Court in the City of Nashville v. Mason, 137 Tenn., 169, 192 S. W., 913; Chandler v. Davidson County, 142 Tenn., 266, 218 S. W., 222, and other authorities.

Counsel for the defendant insists that plaintiff's action is based on the negligence of defendant's agents and servants when he relies on the doctrines announced by our Supreme Court in Woods v. Tipton County,7 Bax., 112; Carothers v. Shelby County, 148 Tenn., 185, 263 S. W., 708; Vance v. Shelby County, 152 Tenn., 141, 273 S. W., 557; Johnson v. Hamilton County, 156 Tenn., 298, 1 S. W. (2 Ed.), 528.

In the City of Nashville v. Mason, supra, it was held that the city was liable for damages to the plaintiff, Mason, where the city maintained a garbage dump which consisted of paper, rags, oil, sticks and all refuse matter found upon the streets of the city and upon the premises of private persons. The city gathered up the refuse and hauled it to the dump and piled it up. The dump was from 100 to 150 feet from the residence of the plaintiff, and was about thirty-five feet higher than plaintiff's house. This dump had been on fire for more than a month preceding plaintiff's loss. The fire, at times, would burn low, but when new deposits were put upon the dump it would flash up. On the day that the plaintiff's house was burned there was a high wind blowing over the dump, in the direction of plaintiff's house, and fire was communicated in that way. It was held that the gathering of the garbage was a governmental duty, but the city performing this governmental duty created a nuisance. The Supreme Court held that a pile of garbage, such as this left to burn at will during a high wind, was a nuisance and a menace to the plaintiff's property rights.

In Chandler v. Davidson County, supra, it was held that where a county, acting through its road commissioners and superintendent of workhouse, in constructing and repairing a road, has created a nuisance consisting of a deep ditch in the road at the entrance to a private residence, and a pedestrian is injured by falling therein in

the dark, both the county, its road commissioners, and the superintendent of the workhouse, were liable.

We quote from the Chandler case as follows:

"It is altogether clear, we think, under the record, that the roadway in question was being constructed or repaired at the point where the accident to plaintiff occurred, resulting in her injury, under the authority of Davidson County, plaintiff in error, through and under the control or supervision of the board or road commissioners, W. M. Pollard, W. G. Hirsig, H. B. Chadwell, J. R. Allen, and S. F. Newson, and the superintendent of the county workhouse, George Hobson, who had charge of the county convicts therein.

"It seems equally clear that during the progress of this work of repair, or the construction of the roadway in question, a ditch or excavation was made by those doing and in active charge of the work, some nine feet in length, four feet wide, and three and one-half feet deep. This hole or excavation was in or near the front entrance to the home of W. S. Noble, near the City of Nashville. It was at the edge of the macadam covered part of the roadway, and possibly may have extended a very limited distance into the edge of the macadam surface. The ditch was cut out of rock largely and was rough and jagged to a degree on its sides and bottom. In this condition the hole or excavation was left unguarded for some time. The plaintiff on the night of the injury was coming from the City of Nashville with three other young ladies, and after alighting from the street car, a short distance away, was passing up the roadway going to the home of W. S. Noble, where the plaintiff was a visitor. When thus approaching the gateway entrance to the grounds of the Noble home, in the darkness, an automobile approached from the rear at a very rapid rate of speed, and, in their effort to reach the entrance or gateway and avoid a collision with the machine the plaintiff fell into the hole. The injuries suffered by the plaintiff as the result of the fall were quite serious." . . .

The Court of Civil Appeals took the view that Davidson County was not liable for the injuries sustained by plaintiff, and reversed the circuit court and dismissed the suit as to it. A petition for writs of certiorari was filed in this court, and the case has been argued at the bar.

It is insisted for the county that it is not liable in any case for the negligence of its officers and agents, while, on the contrary, it is insisted for plaintiff that the action of the county's agents as set out by the court of civil appeals is a nuisance, both public and private, and the county does not have immunity from committing a nuisance either at law or in equity.

Ordinarily, there is a common distinction between counties and municipalities in their corporate character. Counties are not created for the purpose of general government, and because of this fact it has been said that they are corporations of low character, and cannot discharge corporate duties in the broad sense in which municipalities can discharge them. In Burnett v. Maloney, 97 Tenn., 697, 37 S. W., 689, 34 L. R. A., 541, it was said in substance that counties have their creation in the Constitution, and the statutes confer on them all the powers which they possess, prescribe all the duties they owe and impose all the liabilities to which they are subject. Considered with respect to their powers, duties, and liabilities, they stand low down in the scale of corporate existence. They are ranked as quasi corporations. They possess no powers except such as are conferred expressly or by necessary implication, and those are strictly construed and must be strictly pursued. They are distinguishable from private corporations aggregate, and from municipal corporations proper, which are more amply endowed with corporate life and function, because such corporations are intended to exercise the general functions of government over the inhabitants within the corporate limits. It is also said in this case that counties are not liable to implied common-law liabilities as municipal corporations are.

In Whites Creek Turnpike Co. v. Davidson Co. (16 Lea, 24), 84 Tenn., 73, it was held that the liabilities of counties could not be increased by implication, and that the legislation effecting such an increase must be positive.

In Wood v. Tipton County, 7 Baxt. (66 Tenn.), 112, 32 Am. Rep., 561, the court decided the power of county courts over roads and bridges, and held that this power was a prerogative of sovereignty delegated by the Constitution to the county court. It was said in that case that the county is declared a corporation "to facilitate the execution of the powers delegated to it as a local legislature, and to enable it to make binding contracts and to be liable to suit for just claims arising under such contracts. But this is the extent to which, as corporations, counties can be sued."

It was generally considered by the courts and the profession that the citizen had no remedy against the county for an injury caused by the neglect of the county to keep the public road in good repair. Williams v. Taxing District, 16 Lea, 531; Wood v. Tipton, supra; Turnpike Co. v. Davidson County, supra; Id., 14 Lea, 73; McAndrews v. Hamilton County, 105 Tenn., 400, 58 S. W., 483; Rhea County v. Sneed, 105 Tenn., 581, 58 S. W. 1063; State v. Wayne County, 108 Tenn., 262, S. W., 72; 11 Cyc., 497.

These cases all hold that the county is not liable in tort for negligence of its agents in the discharge of their public duties upon the thought that there is no statute making it so liable, and the lia-

bility does not exist at common law, because of the limited nature of the corporate character of the county. It is not a general corporation, and is not organized for the purpose of exercising fully the functions of government. Its governmental capacity is much limited, and it exercises such powers of government as it has by virtue of the statute.

But such is not the question involved herein. Its nonliability for misfeasance of its agents is conceded by plaintiff, but it is insisted that the county, as a legal entity endowed by the Legislature with power to build roads, is not authorized to commit a nuisance either public or private. We think this is true, and we also think that the condition created by the construction of the ditch as described herein is a nuisance as it stands. In the case of Pierce v. Gibson County, 107 Tenn., 233, 64 S. W., 33, 55 L. R. A., 447, 89 Am. St. Rep., 946, this court said that it was well settled that neither a municipality nor a county, in the construction of a public work, could commit a nuisance to the special injury of citizens, and for such act is liable as a private individual in damages. This, of course, is common-law liability, and is based upon well-settled principles of the common law. No individual, natural or legal, has a right to commit a nuisance to the injury of the public or individuals.

The distinction between the act of the county in failing to keep the roads in proper repair and its act in constructing a new road, or remodeling an old one so as to create a nuisance, is perfectly plain. In constructing the new road the county acts for the sovereign, for the reason that the State has delegated its sovereignty to the county for the purpose of constructing the road; but the State has not authorized it to commit a nuisance, because such an act is not an attribute of sovereignty. The sovereign can do no wrong, and it is unthinkable that it could commit or maintain a nuisance. We think this is the theory of the distinction between the two acts. The practical justice of it we think is equally plain. It is not within the power of a citizen to prevent the county from deciding to construct a road at any time or place it may think the public welfare requires. Southern Railway v. Memphis, 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153. The law would be inadequate in this situation to permit the county to construct the road and hold it immune from responsibility for creating and maintaining a nuisance. It cannot erect a nuisance upon the property of a citizen so as to deprive or impair the use of such property.

In this case the nuisance consists of the construction and maintenance of the ditch and not of building the pike. Building the pike is one of the corporate functions of defendant, and is authorized by statute. Constructing the ditch so as to obstruct the ingress and

egress of plaintiff to the premises of her host, and maintaining the ditch as it was maintained, is the actionable nuisance from which plaintiff has a cause of action.

The case of Chandler v. Davidson County has been construed and passed upon a number of times since the doctrine therein announced by our Supreme Court.

In Carothers v. Shelby County, supra, the plaintiff's husband had been killed by crossing one of the bridges of said county in a truck. The structure gave way. It was alleged that the bridge as constructed was a nuisance, and that the county knew it, and had been asked to condemn it but instead kept and maintained it in a dilapidated and dangerous condition, a source of worry and annoyance to the public, amounting to a nuisance. It was alleged that the plaintiff did not know the condition of the bridge. A demurrer was sustained to plaintiff's declaration.

Said our Supreme Court in deciding the Carothers case in an opinion by Mr. Justice Cook:

"It is urged that this was error, and in support of the insistence Chandler v. Davidson County, 142 Tenn., 266, 218 S. W., 222, is relied upon."

Confusion as to the rule applied in the Chandler case arises from a failure to observe the facts of the case, and the language of the opinion, which distinguishes between negligence, an omission of duty, and a nuisance, or active wrong. The court held in the Chandler case:

"The nuisance consists in the construction and maintenance of a ditch, apart from the road, and not in the building of the road. Building the pike is one of the corporate functions of the county, and is authorized by the statutes. Constructing a ditch so as to obstruct premises, and constitute danger to people is the actionable nuisance.

"The nuisance is not a mere omission of duty by the county while exercising the delegated sovereign power of maintaining roads and bridges, but an active continuing wrong beyond the scope of that power."

In Vance v. Shelby County, supra, it was held that the negligence of officers and employees of a county in failing to erect barriers or place lights or other warnings at a place in a road where a bridge was removed does not render county liable for resulting injuries to automobilist. It was held that the agents and employees were guilty of misfeasance, rendering them liable.

It was alleged that the employees of Shelby County had burned or torn out a bridge across Nonconnah creek, that the bridge was a part of the Germantown and Hacks cross road, a public highway, traveled by many people, by tearing out said bridge there was a

chasm from twelve to fifteen feet deep and from thirty to fifty feet wide; that this chasm or opening so left by defendants in said road constituted a dangerous pitfall, snare, deathtrap and nuisance, which was likely to injure persons traveling said road, which fact was known to defendants, or should have been known to them; that, notwithstanding defendants had unlawfully, willfully, and wrongfully created and caused this dangerous pitfal and nuisance in said road, they failed to erect or cause to be erected and maintained any barriers or other obstructions to protect travelers using said road; and failed to maintain lights or other warnings at said place, notifying persons who might use said road of its dangerous condition, on account of which plaintiff, while in the lawful use of said road, and wholly without knowledge of said pitfall, snare, or nuisance, and in the nighttime, drove his automobile into said chasm or opening, on account of which he sustained serious and permanent injuries, from which he suffered great physical pain and mental anguish, and for which he sues. A demurrer was sustained as to Shelby County.

Said the Supreme Court in the opinion by Mr. Justice Hall:

"We are of the opinion that the court of civil appeals was correct in affirming the judgment as to Shelby County. We think the case as to Shelby County falls within the rule announced in Carothers v. Shelby County, 148 Tenn., 187, 253 S. W., 708; White's Creek Turnpike Co. v. State, 16 Lea (84 Tenn.), 24; Wood v. Tipton County, 7 Baxt., 112, 32 Am. Rep., 561; Williams v. Taxing District, 16 Lea, 531; McAndrews v. Hamilton County, 105 Tenn., 399, 58 S. W., 483; Rhea County v. Sneed, 105 Tenn., 581, 58 S. W., 1063; State v. Wayne County, 108 Tenn., 262, 67 S. W., 72.

In Wood v. Tipton County, supra, it was held that, where a damage is sustained by reason of a failure to keep a public bridge in repair, the county is not liable. In that case the court said: "We have no statute subjecting counties to suits for damages arising from neglect of the county officers. The county is declared a corporation to facilitate the execution of the powers delegated to it as a local legislature, and to enable it to make binding contracts, and to be liable to suit for just claims arising under such contracts. But this is the extent to which, as corporations, counties can be sued."

In McAndrews v. Hamilton County, supra, the court said: "The general rule is that counties are not liable for torts or negligence in the condition, use, and management of public institutions. Many reasons are assigned. "1. That there is no fund out of which satisfaction could be had.

"2. That it is better that an individual should suffer than that the public should sustain an inconvenience.

"3. That it is a subordinate political or governmental division of the State.

"4. That its function or action in regard to such institution is legislative, and that neither the State nor county could be sued on such account.

"5. That counties are instrumentalities of government and partake of the immunities of States while acting in a governmental capacity."

The contention of plaintiff that the instant case falls within the rule announced by this court in Chandler v. Davidson County, 142 Tenn., 266, 218 S. W., 222, is not well grounded. In that case the nuisance consisted in the construction and maintenance of a ditch, apart from the road, and not in the building of the road. . . .

The court held in the Chandler case that the nuisance complained of, and out of which the injuries to the plaintiff in that case grew, consisted in the construction and maintenance of the ditch, apart from the road, and not in the building of the road.

The creation of a nuisance is not a mere omission of duty by the county while exercising the delegated sovereign power of maintaining roads and bridges, but is an active continuing wrong beyond the scope of that power.

We are of the opinion that the failure of the officers and employees of the county, who, it is alleged, destroyed, or removed the bridge from the road in question, to erect barriers or place lights or other warnings at the place where said bridge was removed for the protection of travelers, amounted to negligence, but such negligence did not render the county liable to plaintiff for the injuries sustained under the authorities above cited. The writ of certiorari will therefore be denied as to Shelby County."

In Johnson v. Hamilton County, supra, was an action against Hamilton County for injuries received by an inmate of the county insane hospital. In speaking for the court, Mr. Justice Swiggart said:

"(1) It is averred that the negligence of the county consisted of its failure to build, erect and prepare a safe place for the confinement of insane patients, and in permitting the place to be dangerous and unsafe on account of the presence of the razor blades where insane patients, and particularly the plaintiff in error, had access to them.

"The demurrer of the county was on the ground that the negligence complained of was shown by the declaration to have been committed by an agent or employee of the county, for which the county is not liable.

"The court was clearly correct in sustaining this ground of the demurrer, in favor of the county. Vance v. Shelby County, 152 Tenn., 141, and cases therein cited.

"(2) The plaintiff in error seeks to bring the case within the rule of Chandler v. Davidson County, 142 Tenn., 266. This cannot be done. By no stretch of the imagination can it be said that the presence of a razor blade in the cell of an insane patient is a defect in the construction of the building prepared by the county for such patients. Moreover, there is nothing in Chandler v. Davidson County, supra, which would support a holding that a county, maintaining a hospital for the benefit of its citizens who might become insane, would be liable in damages for an injury caused by a defect in the construction or maintenance of the building."

We are of the opinion that the defendant, through its employees, on August 4th had the lawful right to burn the brush, weeds and briers which had been cut and piled for about a week, that this was done for the purpose of plowing the ground underneath the weeds, briers and brush, and the dirt plowed was to be used in building a levee on the Fulton road, and that the employees did not, in so burning this brush, weeds and briers, create a dangerous situation. The county violated no duty it owed to the plaintiff by burning the weeds, briers, brush and willow poles. After the fire was made, the defendant's employees and agents should have used care to put out the fire and not let it spread beyond the public right-of-way. A failure to perform the duty that the employees then owed to the plaintiff was negligence. Whether the employees should have had one of the road hands to remain at the levee, at the noon hour, and watch for the spreading of the fire, which they thought was out, or whether or not the road hands failed to discover that one of the willow poles was still burning when they left, are all questions of want of care or carelessness and questions of negligence. When the witness, Raymond Hall, passed a few minutes after the road hands had left and saw some smoke in the ditch, but no fire, the fire at that time could have been readily controlled. When Mrs. Brundige passed and saw fire near plaintiff's fence, one road hand, left at the scene where the levee was being built and where the fire appeared, could have at that time controlled the fire. The failure of the county's agents and employees to use the degree of care required in connection with the spreading of the fire, which was not wrongfully set out at the beginning, is a question of negligence. The employees of the defendant violated no absolute duty towards the plaintiff when they burned the weeds, briers and brush so as to procure the dirt underneath the same to be used in building the levee.

The plaintiff's damages were not the necessary consequence of what the defendant did through its agents in burning the brush along the highway, and which brush, etc., was burned and the fire

from the same could have been controlled and no damage would have resulted therefrom if the agents had given the fire proper care and attention. The facts of this case do not make out a case of a nuisance, but the whole case is one of negligence on the part of the employees, the road hands under the foreman, in not using due and proper care, and in leaving the place where the fire had been on the right of way, thinking the fire was out, or in not having some-one remain and watch while the others went for their noon meal. Here we have an omission of duty, not an act which was wrong within itself.

We are of the opinion that under the undisputed facts found in this record there is no evidence to sustain the allegations that the defendant was guilty of creating and maintaining a nuisance. Plaintiff's damages were a result of negligence and not a nuisance. The fire at first was lawfully set out. The defendant did not create a dangerous situation to begin with; it was under duty to watch the danger and see that the fire did not spread to plaintiff's field and thus damage his property. The failure to watch the fire and not let it reach the plaintiff's property involves a question of negligence. The motion for a directed verdict should have been sustained. Under the evidence we have reached the conclusion that there is no liability against Weakley County, one of the counties of the State.

The doctrine announced in Chandler v. Davidson County, supra, is not applicable to the facts of the instant case, but this case is controlled by the principles announced in Carothers v. Shelby County, supra; Vance v. Shelby County, supra; Woods v. Tipton County, supra; McAndrews v. Hamilton County, 105 Tenn., 399, 58 S. W., 483, and in numerous cases by our Supreme Court cited in these opinions.

It results that the assignments of error that there is no material evidence to sustain the verdict, and that the court should have directed a verdict for defendant at the conclusion of all the evidence, are sustained. The judgment of the lower court is reversed, and plaintiff's suit is dismissed at his costs. The other assignments become immaterial.

Heiskell and Senter, JJ., concur.